UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TENNESSEE GAS PIPELINE COMPANY L.L.C., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. |
| | : | |
| v. | : | |
| | : | |
| DELAWARE RIVERKEEPER NETWORK, MAYA VAN ROSSUM, RESPONSIBLE DRILLING ALLIANCE, and PENNSYLVANIA ENVIRONMENTAL HEARING BOARD, | : | (Electronically Filed) |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION
TO PREVENT THE PENNSYLVANIA ENVIRONMENTAL HEARING
BOARD FROM ISSUING SUPERSEDEAS RELIEF**

**SAUL EWING LLP**

John F. Stoviak, Esquire (*pro hac vice*
    pending)
Elizabeth U. Witmer, Esquire
Jennifer L. Beidel, Esquire
Atty. I.D. Nos. 23471, 55808, 204450
jstoviak@saul.com
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
Phone: (215) 972-7850
Fax:    (215) 972-1843

Dated:  January 7, 2013

*Attorneys for Plaintiff Tennessee Gas
Pipeline Company L.L.C.*

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................5

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY .........................7

    A.  The Project...................................................................7

    B.  The FERC Review............................................................8

    C.  Time Sensitivity of the Project.......................................11

    D.  The EHB Proceedings ...................................................11

III.   STATEMENT OF QUESTIONS INVOLVED ...........................................13

IV.   TENNESSEE IS ENTITLED TO A PRELIMINARY INJUNCTION.........13

    A.  Tennessee Is Likely to Succeed on the Merits. ...........................14

        1.  The Case law on the Preemptive Effects of the NGA is Uniform and Extensive..................................................................14

        2.  The EHB Proceeding is Field Preempted for the Reasons Stated Clearly in *Rockies Express*........................................20

    B.  Tennessee Will Suffer Immediate and Irreparable Harm without the Injunction.............................................................22

    C.  The Defendants Will Not Suffer Irreparable Harm if the Injunction is Granted................................................................25

    D.  The Public Interest Favors Granting the Injunction, which will Permit Construction to Proceed on Schedule...............................26

V.  CONCLUSION.....................................................................29

# TABLE OF AUTHORITIES

## FEDERAL CASES

Amoco Prod. Co. v. Village of Gambell, Alaska,
    480 U.S. 531 (1987)..............................................................................22, 23

ANR Pipeline Co. v. 11.66 Acres of Land,
    No. 06-C-0190, 2006 WL 1277913 (E.D. Wis. May 5, 2006)...........................19

Citizens for Rational Coastal Dev. v. U.S. Fed. Highway Admin.,
    Nos. 07-4551 (JAP), 07-5246 (JAP), 2008 WL 2276005 (D.N.J. May 30,
    2008) ..............................................................................................................21

Colo. Interstate Gas Co. v. Wright,
    707 F. Supp. 2d 1169 (D. Kan. 2010)...............................................................11

Columbia Gas Transmission Corp. v. An Easement,
    No. 05 CV 2895, 2006 WL 401850 (E.D. Pa. Feb. 16, 2006) ...........................23

E. Tenn. Natural Gas, LLC v. 3.62 Acres,
    No. Civ. A. 1:06CV00028, Civ. A. 1:06CV00029, 2006 WL 1453937
    (W.D. Va. May 18, 2006)...................................................................................19

Gerardi v. Pelullo,
    16 F.3d 1363 (3d Cir. 1994) .............................................................................20

Hoxworth v. Blinder, Robinson & Co.,
    903 F.2d 186 (3d Cir. 1990) .............................................................................20

Islander E. Pipeline Co., L.L.C. v. Blumenthal,
    478 F. Supp. 2d 289 (D. Conn. 2007).............................................................6, 11

Maritimes & Ne. Pipeline, L.L.C. v. 6.85 Acres of Land,
    537 F. Supp. 2d 223 (D. Me. 2008)...................................................................19

Mich. Consol. Gas Co. v. Panhandle E. Pipe Line Co.,
    887 F.2d 1295 (6th Cir. 1989) ..........................................................................11

N. Border Pipeline Co. v. 64.111 Acres of Land,
    125 F. Supp. 2d 299 (N.D. Ill. 2000)............................................................19, 23

N. Natural Gas Co. v. Kan. Corp. Comm'n,
    372 U.S. 84 (1963)........................................................................2, 10

National Fuel Gas Supply Corp. v. Public Service Commission of the State
    of New York, 894 F.2d 571 (2d Cir. 1990) ........................................12

NE Hub Partners, L.P. v. CNG Transmission Corp.,
    239 F.3d 333 (3d Cir. 2001) ...........................................11, 13, 14, 15

Northern Natural Gas Co. v. Iowa Utilities Board,
    377 F.3d 817 (8th Cir. 2004) ........................................................12, 13

Perryville Gas Storage LLC v. 40 Acres of Land,
    Civ. A. No. 3:11-cv-1635, 2011 WL 4943318 (W.D. La. Oct. 17, 2011) .........19

PharMethod, Inc. v. Caserta,
    382 F. App'x 214 (3d Cir. 2010)........................................................9

Pub. Utils. Comm'n of Cal. v. FERC,
    900 F.2d 269 (D.C. Cir. 1990)..........................................................11

Public Serv. Comm'n of W. Va. v. Fed. Power Comm'n,
    437 F.2d 1234 (4th Cir. 1971) .........................................................11

Rockies Express Pipeline LLC v. Ind. State Natural Res. Comm'n,
    No. 1:08-cv-1651, 2010 WL 1881084 (S.D. Ind. May 7, 2010)............13, 16, 17

Rockies Express Pipeline LLC v. Ind. State Natural Res. Comm'n,
    No. 1:08-cv-1651-RLY-DML, 2010 WL 3882513 (S.D. Ind.
    Sept. 28, 2010) ...........................................................16, 17, 18

Rogers v. Corbett,
    468 F.3d 188 (3d Cir. 2006) ..............................................................9

Schneidewind v. ANR Pipeline Co.,
    485 U.S. 293 (1988).......................................................................1, 10

Se. Supply Header, LLC v. 180 Acres,
    Civ. A. No. 2:07CV280KS-MTP, 2008 WL 160700 (S.D. Miss.
    Jan. 9, 2008).................................................................................19

Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement
    Beneath 11.078 Acres,
    Civ. A. Nos. 08-168, 08-169, 08-177, 08-179, 08-180, 2008
    WL 4346405 (W.D. Pa. Sept. 19, 2008).........................................................19, 23

Tenn. Gas Pipeline Co. v. 0.018 Acres of Land,
    Civ. A. No. 10-4465 (JLL), 2010 WL 3883260 (D.N.J. Sept. 28, 2010)...........19

Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth.,
    2 F. Supp. 2d 106 (D. Mass. 1998)....................................................................11

Tenn. Gas Pipeline v. A Permanent Easement for 0.122 Acres and
    Temporary Easements for 0.482 Acres,
    Civ. A. No. 3:10-CV-02197-ARC (M.D. Pa. Mar. 11, 2011)...........................19

Williams Natural Gas Co. v. Oklahoma City,
    890 F.2d 255 (10th Cir. 1989) ..........................................................................18

## FEDERAL STATUTES

18 C.F.R. pt. 380 ..................................................................................................5

40 C.F.R. § 1501.3 ...............................................................................................5

40 C.F.R. § 1508.9 ...............................................................................................5

15 U.S.C. §§ 717-717z........................................................................1, 2, 4, 6, 8

42 U.S.C. § 4332...................................................................................................4

Federal Rule of Civil Procedure 65 ..................................................................1, 9

Local Rule 7.8(b)(2)............................................................................................27

## I.   __INTRODUCTION__

Plaintiff Tennessee Gas Pipeline Company L.L.C. ("Tennessee") submits this Emergency Motion for Preliminary Injunction pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717z, and Federal Rule of Civil Procedure 65, seeking to enjoin a collateral attack by the Riverkeeper Defendants[1] on the Order and Notice to Proceed issued by the Federal Energy Regulatory Commission ("FERC") for Tennessee's Northeast Upgrade Project (the "Project").  The Project involves constructing an interstate natural gas pipeline in Bradford, Wayne, and Pike counties in Pennsylvania and in New Jersey,[2] is scheduled to begin this January in Pennsylvania.[3]

The United States Supreme Court has ruled that by enacting the NGA, "Congress occupied the field of matters relating to wholesale sales and transportation of natural gas in interstate commerce."  *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 305 (1988).  The NGA long has been recognized as a comprehensive scheme of federal regulation of "all wholesales of natural gas in

---

[1]   The Riverkeeper Defendants are Delaware Riverkeeper Network ("DRN"), Maya van Rossum, and Responsible Drilling Alliance.

[2]   The Project also includes modifications and upgrades at existing compressor and meter stations in Pennsylvania and New Jersey.

[3]   *See* FERC Order Issuing Certificate and Approving Abandonment, Tennessee Gas Pipeline Company, L.L.C. ("FERC Order") at ¶¶ 5,7, attached hereto as Exhibit A.

interstate commerce." *N. Natural Gas Co. v. Kan. Corp. Comm'n*, 372 U.S. 84, 91 (1963) (quoting *Phillips Petroleum Co. v. Wisc.*, 347 U.S. 672, 682 (1954)). FERC issues approvals for the construction of interstate natural gas pipeline facilities, with exclusive appellate review vested in the United States Circuit Courts of Appeals.[4] Here, the Riverkeeper Defendants attempt to circumvent federal law by seeking a stay of construction of the Project and review of it from the Pennsylvania Environmental Hearing Board ("EHB") even though (a) the issues they raise were considered and evaluated by FERC, and (b) the federal process before FERC continues in the form of pending Requests for Rehearing, including one filed by one of the Riverkeeper Defendants, DRN. Because the EHB intends to hold a supersedeas hearing on this issue on January 14-16, 2013, Tennessee requests that the Court enter the requested preliminary injunctive relief on or before that date.

Tennessee is entitled to injunctive relief to prevent this collateral attack on a federally-preempted process because: (1) Tennessee is likely to succeed on the merits of its arguments that any actions by the EHB are preempted by the NGA, (2) any delay in the Project's early construction phases would irreparably harm Tennessee and its suppliers by delaying the shipment of needed natural gas to the Northeast region by the November 1, 2013 in-service date, (3) any harms to the

---

[4]   *See* 15 U.S.C. §§ 717r(b), (d). However, as discussed in footnote 6 below, this Court, rather than the Circuit courts, has jurisdiction to enforce the FERC's Orders, via injunctive relief or otherwise.

Defendants from denying the injunction are speculative at best, and (4) the public interest will be served by the injunction because the Project will supply needed natural gas to the region, create jobs, and generate federal, state, and local tax revenues.

Accordingly, Tennessee respectfully requests that the Court grant its Emergency Motion for Preliminary Injunction, enjoin the EHB from hearing the Petitions for Supersedeas filed by the Riverkeeper Defendants currently scheduled for January 14-16, 2013, and enjoin the Riverkeeper Defendants from seeking any other relief from the EHB that could interfere with FERC's exclusive jurisdiction and prevent the Project's timely construction.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   The Project

The federally-approved Project includes construction of interstate natural gas pipeline segments designed to add capacity to transport 636,000 dekatherms per day of natural gas to the Northeast region.[5]   Declaration of Laura McGuire Heckman ("Heckman Decl.") ¶ 4, attached hereto as Exhibit C.   Tennessee has

---

[5]     This amount of natural gas is sufficient to power the furnaces of nearly 2.5 million homes each year. *See* Am. Gas Ass'n, *How to Measure Natural Gas*, http://www.aga.org/KC/ABOUTNATURALGAS/ADDITIONAL/ Pages/HowtoMeasureNaturalGas.aspx (last visited Dec. 7, 2012); Energy Info. Admin., Office of Oil and Gas, *Trends in U.S. Residential Natural Gas Consumption*, June 2010, http://www.eia.gov/pub/oil_gas/natural_gas/ feature_articles/2010/ngtrendsresidcon/ngtrendsresidcon.pdf (last visited Dec. 7, 2012).

entered into shipper contracts that require Project completion by November 1, 2013 to meet regional demands for natural gas that peak at that time of year. *See id.* ¶ 7; Declaration of Gerald D. Creel ("Creel Decl.") ¶¶ 6, 15, 19, attached hereto as Exhibit B.

Through November 2012, Tennessee has expended or committed to expend approximately $93 million in Project costs, including substantial environmental mitigation measures and lease payments for land access to government entities of more than $16 million. Heckman Decl. ¶ 5; Creel Decl. ¶ 9. As approved by FERC, the Project will create 1,795 job years during construction and will generate significant public financial benefits, including: (a) $74.5 million in income for local labor, (b) $101.5 million in GDP in Pennsylvania and New Jersey, and (c) $29.1 million in federal tax revenues, and $37.8 million in state and local tax revenues. Heckman Decl. ¶ 11.

### B.    The FERC Review

Under the NGA, FERC analyzes and determines whether an interstate natural gas pipeline project is in the "public convenience and necessity." 15 U.S.C. § 717f(c). Under the National Environmental Policy Act, FERC analyzes each interstate natural gas project to determine whether the project is a "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). If FERC concludes that the project does not significantly affect

the environment, FERC will issue a finding of no significant impact.  40 C.F.R. §§ 1501.3, 1508.9(a)(1); 18 C.F.R. Part 380.

Here, FERC conducted an extensive review of the Project for almost two years, commencing in July 2010 with a pre-filing process.  Creel Decl. ¶ 17. FERC conducted public scoping meetings and sought and considered comments from 1,500 interested parties.  Creel Decl. ¶¶ 17-18.  Among the commenters was the DRN.  *See* FERC Order ¶¶ 39-201.

On November 21, 2011, FERC staff issued a 273-page Environmental Assessment ("EA"), concluding that the Project, with appropriate mitigation measures, would have no significant environmental impact.  EA, at 1-3 to 1-4, 4-1, attached hereto as Exhibit D.  The EA examined the Project's anticipated impact on:  (a) geology and soils, (b) water resources, fisheries, and wetlands, (c) vegetation and wildlife, (d) land use, recreation, special interest areas, and visual resources, (e) socioeconomics, (f) cultural resources, (g) air quality, (h) noise, (i) reliability and safety, and (j) cumulative impacts.  FERC Order ¶¶ 64, 133.  The EA also considered alternatives to the proposed Project, compliance and mitigation measures, and other permitting and approval requirements.  *See, e.g., id.* ¶¶ 82, 133.

FERC issued the  FERC Order for the Project on May 29, 2012.  Creel Decl. ¶ 19.  The Order states:  "[T]he project will help alleviate pipeline constraints in

9

the region by increasing pipeline capacity to the high-demand markets in the northeast." FERC Order ¶ 15.   FERC concluded "that Tennessee's proposed Northeast Upgrade Project is required by the public convenience and necessity, as conditioned in this order." *Id.* ¶ 17.

On June 28, 2012, the DRN and others filed a Request for Rehearing ("Rehearing Request") before FERC.   The Rehearing Request *remains pending* before FERC. *See* FERC Docket No. CP11-161-000.

On December 14, 2012, FERC issued a Notice to Proceed, which permits Tennessee to proceed with pipeyard preparations, tree felling and compressor station modifications and upgrades in Pennsylvania while the Rehearing Request remains pending. *Id.*[6]

---

[6]   The NGA vests exclusive jurisdiction for review of decisions of the FERC in the United States Courts of Appeals for the District of Columbia or for the Circuit in which the facility at issue is located – here, the Third Circuit. *See* 15 U.S.C. §§ 717r(b), (d).   Such review may only occur "sixty days *after*" the FERC rules on any pending applications for rehearing. *Id.* (emphasis added).   As the Rehearing Request remains pending with the FERC, the right to seek appellate review of the FERC's actions is not yet ripe.

This Court, however, has jurisdiction over the declaratory and injunctive relief sought via this action.   *See Islander E. Pipeline Co., L.L.C. v. Blumenthal*, 478 F. Supp. 2d 289, 295-96 (D. Conn. 2007) (citing *Williams Natural Gas Co. v. Oklahoma City*, 890 F.2d 255, 264 (10th Cir. 1989) ("The province of the district courts with respect to the FERC certificates is 'not appellate but, rather, to provide for enforcement.'").

## C.    Time Sensitivity of the Project

Tennessee must begin construction of the Project this month.  Tennessee's construction schedule is carefully crafted to comply with various permits, clearances, and jurisdictional reviews, which collectively allow only limited time windows to perform certain critical construction activities.  Creel Decl. ¶¶ 21, 23, 26-31.  For example, to avoid violation of the Migratory Bird Treaty Act, the USFWS has recommended that tree felling along the loops in Pennsylvania take place between *September 1, 2012 and March 31, 2013. Id.* ¶ 29.

Because of these limited time windows, any delay, no matter how brief, may have a cascading effect of dramatically delaying Project completion. *Id.* ¶¶ 32-33; Heckman Decl. ¶ 9.   Tree felling is a prerequisite to completing all other construction tasks.  If tree felling is delayed, Tennessee will be put in jeopardy of failing to complete this work before the USFWS's March 31, 2013 deadline. *See* Creel Decl. ¶¶ 27-29, 32-33.  The USFWS will not allow tree felling to resume until November 1, 2013, along certain pipeline locations. *See id.* ¶¶ 28-29. Missing these deadlines would cause Tennessee to miss the November 1, 2013 Project completion deadline. *Id.* ¶¶ 32-33.

## D.    The EHB Proceedings

On December 18, 2012, the Riverkeeper Defendants filed an Appeal with the EHB at EHB Consolidated Docket No. 2012-196-M and two petitions − (a) a

petition for temporary supersedeas, which the EHB denied following oral argument on December 20, 2012, and (b) a petition for supersedeas (the "Petition"), which the EHB has scheduled for hearing on January 14-16, 2013. *See* Petition for Supersedeas, attached hereto as Exhibit E; Scheduling Order, dated Dec. 20, 2012, attached hereto as Exhibit F. The Petition asks the EHB to supersede one permit authorization and two permits issued by the Pennsylvania Department of Environmental Protection ("DEP") related to the Project. Petition, at 1.

Each of these permits involves issues considered by the EA. *See* EA, at 1-1, 1-21 to 1-23 (including as "required" permits under the "Pennsylvania State" subsection all three permits challenged by the Riverkeeper Defendants); *see also* 15 U.S.C. § 717r(d)(1) (granting original and exclusive jurisdiction over reviews of the actions of state administrative agencies issuing permits "required under Federal law" by FERC). Moreover, the FERC Order states:

> Any state or local permits issued with respect to the jurisdictional facilities authorized herein must be consistent with the conditions of this certificate. The Commission encourages cooperation between interstate pipelines and local authorities. However, *this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction, replacement, or operation of facilities approved by this Commission.*

FERC Order ¶ 202 (emphasis added).

III.   **STATEMENT OF QUESTIONS INVOLVED**

Is Tennessee entitled to a preliminary injunction: (a) preventing the EHB from exercising jurisdiction over the petition for supersedeas filed by the Riverkeeper Defendants at EHB Docket No. 2012-196-M; and (b) preventing the Riverkeeper Defendants from pursuing further relief from the EHB regarding the Project?

SUGGESTED ANSWER:      Yes.

IV.   **TENNESSEE IS ENTITLED TO A PRELIMINARY INJUNCTION**

Under Federal Rule of Civil Procedure 65, Tennessee must show:  (i) the likelihood that the moving party will succeed on the merits; (ii) the extent to which the moving party will suffer irreparable harm without injunctive relief; (iii) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (iv) the public interest favors such relief.  *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006); *see also PharMethod, Inc. v. Caserta*, 382 F. App'x 214, 217 (3d Cir. 2010).[7]

All factors favor the entry of an injunction preventing the EHB and the Riverkeeper Defendants from making a collateral attack through a federally-preempted process to delay construction of the Project.

---

[7]      All unpublished decisions are attached hereto as Exhibit G.

A.     **Tennessee Is Likely to Succeed on the Merits.**

Tennessee is likely to succeed on the merits because the NGA preempts the field of regulation of natural gas pipeline construction and prohibits state and local regulation that conflicts with decisions made by FERC pursuant to the NGA. Pursuant to the Supremacy Clause of the United States Constitution, the United States Supreme Court has ruled that by enacting the NGA, "Congress occupied the field of matters relating to wholesale sales and transportation of natural gas in interstate commerce." *Schneidewind,* 485 U.S. at 300, 305, 308 (concluding that a state securities law that would control the rates and facilities of natural gas companies was preempted because it regulated in a field the NGA has occupied to the exclusion of state law and attempted to regulate matters within FERC's exclusive jurisdiction). The NGA long has been recognized as a comprehensive scheme of federal regulation of "all wholesales of natural gas in interstate commerce." *N. Natural Gas Co.,* 372 U.S. at 91 (quoting *Phillips Petroleum Co.,* 347 U.S. at 682).

1.     **The Case law on the Preemptive Effects of the NGA is Uniform and Extensive.**

Following the Supreme Court's decision in *Schneidewind,* numerous Circuit and District Courts have found the NGA to be field or conflict preemptive, or

both.[8] Field preemption applies when a "federal regulatory scheme is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 348 (3d Cir. 2001) (citation omitted). Conflict preemption applies "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

The United States Court of Appeals for the Second Circuit applied the Supreme Court's *Schneidewind* decision in the context of environmental

---

[8]   *See, e.g., Pub. Utils. Comm'n of Cal. v. FERC*, 900 F.2d 269, 274 (D.C. Cir. 1990) (observing that "[c]ases are legion affirming the exclusive character of FERC jurisdiction where it applies, both under the NGA . . . and under the analogous provisions of the Federal Power Act," and citing numerous U.S. Supreme Court decisions by way of example); *Mich. Consol. Gas Co. v. Panhandle E. Pipe Line Co.*, 887 F.2d 1295, 1299 (6th Cir. 1989) (stating that in enacting the NGA, "Congress delegated to the Federal Power Commission (now the FERC) 'exclusive jurisdiction over the transportation and sale of gas in interstate commerce for resale'" (quoting *Schneidewind*, 485 U.S. at 300-01)); *Public Serv. Comm'n of W. Va. v. Fed. Power Comm'n*, 437 F.2d 1234, 1238-39 (4th Cir. 1971) ("the right to acquire and right to operate an interstate pipeline . . . cannot be made dependent upon approval by a state regulatory commission"); *Colo. Interstate Gas Co. v. Wright*, 707 F. Supp. 2d 1169, 1176, 1179 (D. Kan. 2010) (finding Kansas gas storage statutes and regulations field preempted by the NGA); *Islander E. Pipeline Co., L.L.C.*, 478 F. Supp. 2d at 295 (finding permit requirement conflict preempted by the NGA); *Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth.*, 2 F. Supp. 2d 106, 111 (D. Mass. 1998) (explaining that "the NGA occupies the field with respect to the regulation of natural gas rates and facilities," (internal quotations omitted) and that "[t]here is no question that the pipeline itself is a 'facility' used in the transportation of natural gas").

regulations in *National Fuel Gas Supply Corp. v. Public Service Commission of the State of New York*, 894 F.2d 571 (2d Cir. 1990). The Second Circuit concluded that New York's Public Service Commission's ("PSC") proposed site-specific environmental review was field preempted, stating that the review "is undeniably a regulation of a facility used in the interstate transportation of natural gas." *Id.* at 576. The court noted that the PSC's review procedure "would certainly delay and might well, by the imposition of additional requirements or prohibitions, prevent the construction of federally approved interstate gas facilities." *Id.* at 576-77. In the court's view, subjecting the pipeline company to the state review process itself was the issue: "Even if a transporter were ultimately successful before the PSC, the practical effect would be to undermine FERC approval by imposing the costs and delays inherent in litigation that must be undertaken without any guidelines as to limits on the exercise of state authority." *Id.* at 578. Further, even assuming that "a small residue of valid PSC authority may exist," the court noted that FERC "expressly considered various data regarding the environmental effects of National Fuel's project before issuing a certificate of public convenience and necessity." *Id.* at 578 & n.3, 579. In other words, conflict preemption would act to bar the PSC's review procedure, even if field preemption did not.

Other federal courts have reached similar conclusions. In *Northern Natural Gas Co. v. Iowa Utilities Board*, 377 F.3d 817 (8th Cir. 2004), the Eighth Circuit

discussed Iowa's attempt to regulate the environmental effects of the construction and maintenance of Northern Natural Gas's ("NNG") FERC-approved interstate natural gas pipeline. *Id.* at 819. Relying on *Schneidewind*, the Eighth Circuit concluded that the Iowa provisions were field preempted. *Id.* at 821. The court noted that FERC had addressed in varying degrees many of the same environmental issues covered by Iowa's regulations, which might imply conflict preemption. *Id.* at 820. But, the court further concluded that no actual conflict between the FERC Order and the regulations at issue was necessary to trigger preemption. Regulating in a preempted field was enough. *Id.* at 822-23 (*citing Schneidewind* at 309 & n.12).

*National Fuel* and *Northern National Gas* make clear that FERC's jurisdiction includes environmental issues and prohibits states from "engag[ing] in concurrent site-specific environmental review." *N. Natural Gas*, 377 F.3d at 823 (citing *Nat'l Fuel*, 894 F.2d at 579). The fact that FERC encourages pipeline companies to comply with state and local permitting requirements "does not negate its ultimate authority to determine the route of any gas pipeline regardless of state objections." *Rockies Express Pipeline LLC v. Ind. State Natural Res. Comm'n*, No. 1:08-cv-1651, 2010 WL 1881084, at *2 (S.D. Ind. May 7, 2010).

In *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333 (3d Cir. 2001), the Third Circuit Court of Appeals hinted at a similar conclusion, but

for procedural reasons, it did not decide the preemption argument on the merits. NE Hub Partners, L.P. ("NE Hub") had obtained a FERC order to construct a gas storage facility in Pennsylvania. *Id.* at 336. Although the FERC order required NE Hub to comply with Pennsylvania's drilling regulations and obtain state-specific permits, the FERC order also contained language identical to that contained in Tennessee's FERC Order that "this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction or operation of facilities approved by this Commission." *Id.* at 339. NE Hub obtained three different state permits from the DEP. Two companies with competing gas storage facilities appealed to the EHB after intervening in the FERC proceedings. They "again raised each issue they had advanced before FERC." *Id.* NE Hub then filed an action in this Court seeking to enjoin the EHB proceedings. *Id.* at 336, 339-40.

This Court denied NE Hub's injunction request for lack of ripeness because the EHB had not yet taken an action that could interfere with the federal regulations. *Id.* at 340. NE Hub appealed to the Third Circuit. *Id.* The Third Circuit reversed, finding that "preemption may operate to spare a party from [the] very process" of litigating before the EHB. *Id.* at 342. When preemption claims are raised, "the need to participate in a state regulatory process in conflict with

federal policy has been recognized as a hardship." *Id.* at 346.  The Third Circuit

also stated that:

> While it is true that the [Department] permits are valid
> pending the E.H.B. outcome, it is not a regulation but the
> regulatory process that afflicts NE Hub. If the process is
> preempted it is quite immaterial that the effectiveness of
> the permits challenged has not been stayed.

*Id.* at 346.

Although the Third Circuit did not reach the merits of the preemption issue,

it stated:  "[I]f it is evident that the result of a process must lead to . . . preemption,

it would defy logic to hold that the process itself cannot be preempted and that a

complaint seeking that result would not raise a ripe issue." *Id.* at 347 n.14, 348.

The Third Circuit held that since the EHB had "not disclaimed a right to reexamine

the issues" that were identical to those issues raised before FERC, the request for

injunctive relief was, in fact, ripe. *Id.* at 343.[9]

The Third Circuit's decision in *NE Hub* strongly suggests that the Third

Circuit would take a position similar to that of the Second and Eighth Circuits in

*National Fuel* and *Northern National Gas* – namely, that collateral attacks via state

environmental review processes are field preempted by the NGA and conflict

preempted to the extent they contradict FERC's orders.

---

[9]     Tennessee is filing today a Motion to Dismiss the EHB appeal on
preemption grounds.

2.      **The EHB Proceeding is Field Preempted for the Reasons Stated Clearly in *Rockies Express*.**

The facts of the recent decision in *Rockies Express Pipeline LLC v. Indiana State Natural Resources Commission*, No. 1:08-cv-1651, 2010 WL 1881084 (S.D. Ind. May 7, 2010) mirror this case in almost every respect.   There, a pipeline company ("REX") received an order from FERC permitting it to construct a pipeline from Missouri to Ohio.   FERC determined the appropriate route for the pipeline and imposed mitigation conditions to minimize environmental impacts. The FERC Order required REX to cooperate with state and local authorities for purposes of permit issuance, but noted that this requirement "does not mean that state and local agencies . . . may prohibit or unreasonably delay the construction or operation" of the pipeline.  *Id.* at *1; *Rockies Express Pipeline LLC v. Ind. State Natural Res. Comm'n*, No. 1:08-cv-1651-RLY-DML, 2010 WL 3882513, at *2 (S.D. Ind. Sept. 28, 2010).   The Indiana Department of Natural Resources ("DNR") issued all necessary permits.   A non-profit organization that had participated in the FERC proceedings and opposed issuance of the FERC order asked the Indiana State Natural Resources Commission ("NRC") to "reverse" the state DNR's permitting decisions.  2010 WL 1881084, at *1-2.   REX sought a declaratory judgment and injunction to prevent the NRC "from continuing any further efforts to review the propriety of an interstate natural gas pipeline."  *Id.* The *Rockies* court granted the requested preliminary injunction, finding:  (1) REX

was "highly likely to succeed on the merits in demonstrating that Federal law preempts Defendant NRC's state law authority to proceed with the Administrative Action," and (2) it would be "impossible" for REX to comply with both the FERC Order and any decision by the NRC that would invalidate the permits. *Id.* at *2. Accordingly, the court found that the NRC proceedings were both field and conflict preempted. *Id.*

Here, as in *Rockies*, this Court should find that Tennessee is likely to succeed on the merits of its claims that the EHB proceedings are field and conflict preempted by the NGA. The permits issued by the DEP involve issues considered by FERC in its EA. *See supra* Part II.D. While the FERC Order required cooperation with state authorities, it also included the same limiting language as the *Rockies* FERC Order, namely, that state regulation may not "prohibit or unreasonably delay" the Project. FERC Order ¶ 202. And, as in *Rockies,* this Court is not being asked to second-guess the DEP. Instead, it is being asked to keep the Riverkeeper Defendants and the EHB from collaterally attacking FERC's review and approval of the Project, and the DEP, which has issued permits for the Project. *See Rockies*, 2010 WL 3882513, at *4. If the EHB retained jurisdiction over this matter and revoked one or all of the DEP permits, then it would be acting directly in conflict with FERC's jurisdiction, which is not permitted. *Id.* at *5

21

("[R]evocation of a construction permit is not the type of 'indirect effect' the Supreme Court has said could hypothetically coexist" with FERC's jurisdiction.).

The Riverkeeper Defendants had and continue to have their chance to challenge the FERC proceedings and may pursue appellate rights through the Circuit Courts of Appeals once FERC has decided the pending rehearing requests. *See supra* note 6. But, this type of collateral attack is field and conflict preempted, and cannot be countenanced. *Id.* at *5-6; *see also Williams Natural Gas Co. v. Oklahoma City*, 890 F.2d 255, 261-62 (10th Cir. 1989) (finding "exclusive" the judicial review of FERC decisions vested with the Circuit Courts of Appeals by the NGA and prohibiting collateral attacks of the same in state court). The Court should find that Tennessee has satisfied the likelihood of success on the merits element.

### B.     Tennessee Will Suffer Immediate and Irreparable Harm without the Injunction.

If the EHB is permitted to proceed with its January 14, 2013 hearing, Tennessee will be at significant risk of not completing the Project by the November 1, 2013 in-service date, and Tennessee, its shippers, and the public will suffer irreparable harm. *See* Creel Decl. ¶¶ 32-33. Courts in the Third Circuit and around the country have agreed that construction delays in building interstate

pipelines constitute immediate and irreparable harm.[10]  For example, in *Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, Civ. A. Nos. 08-168, 08-169, 08-177, 08-179, 08-180, 2008 WL 4346405 (W.D. Pa. Sept. 19, 2008), the United States District Court for the Western District of Pennsylvania found that without immediate possession, a pipeline company would not be able to comply with the FERC order to complete construction on time.  The court concluded that the pipeline company, "its customers and the general public will be irreparably harmed if [the pipeline company is] not granted immediate possession of the subject property of the Defendants to perform the construction set forth in the FERC Order of public convenience and necessity." *Steckman*, 2008 WL 4346405, at *15-16.

---

[10]   *See, e.g., Tenn. Gas Pipeline v. A Permanent Easement for 0.122 Acres and Temporary Easements for 0.482 Acres*, Civ. A. No. 3:10-CV-02197-ARC (M.D. Pa. Mar. 11, 2011) (Caputo, J.); *Tenn. Gas Pipeline Co. v. 0.018 Acres of Land*, Civ. A. No. 10-4465 (JLL), 2010 WL 3883260, at *3 (D.N.J. Sept. 28, 2010); *see also Perryville Gas Storage LLC v. 40 Acres of Land*, Civ. A. No. 3:11-cv-1635, 2011 WL 4943318, at *3 (W.D. La. Oct. 17, 2011); *Maritimes & Ne. Pipeline, L.L.C. v. 6.85 Acres of Land,* 537 F. Supp. 2d 223, 226-27 (D. Me. 2008); *Se. Supply Header, LLC v. 180 Acres*, Civ. A. No. 2:07CV280KS-MTP, 2008 WL 160700, at *2-3 (S.D. Miss. Jan. 9, 2008); *E. Tenn. Natural Gas, LLC v. 3.62 Acres,* No. Civ. A. 1:06CV00028, Civ. A. 1:06CV00029, 2006 WL 1453937, at *14 (W.D. Va. May 18, 2006); *ANR Pipeline Co. v. 11.66 Acres of Land*, No. 06-C-0190, 2006 WL 1277913, at *1 (E.D. Wis. May 5, 2006); *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000).

As in *Steckman*, and a multitude of other cases, Tennessee will be irreparably harmed by any delay in its ability to comply with its construction schedule.   The EHB proceedings could take months or longer – a delay that Tennessee and the public cannot afford.

The November 1, 2013 in-service date is critical.  Tennessee and its shippers are relying on completion of the project by that date to meet the demands for clean-burning natural gas supplies to the Northeast region.  Heckman Decl. ¶¶ 12-14; Creel Decl. ¶¶ 6, 15, 19.  To meet that deadline, Tennessee must be able to start construction in January 2013, which it is currently permitted to do under both the FERC's Notice to Proceed and the DEP's permits.  *See* FERC Docket No. CP11-161-000; Creel Decl. ¶ 22.

Failure to meet the November 1, 2013 deadline may cause Tennessee to suffer a loss of customer confidence and other adverse impacts on its reputation in the industry, which could make it more difficult for Tennessee to enter into future shipping contracts.  Heckman Decl. ¶¶ 12-14.  And, for every month of delay to the anticipated in-service date of November 1, 2013, Tennessee would lose $9.1 million.  *Id.* ¶ 8; *see also Gerardi v. Pelullo*, 16 F.3d 1363, 1373-74 (3d Cir. 1994) ("[T]here is ample authority for the proposition that the unsatisfiability of a money judgment can constitute irreparable injury for the purposes of granting a preliminary injunction." (internal quotation omitted)); *Hoxworth v. Blinder*,

*Robinson & Co.*, 903 F.2d 186, 205-06 (3d Cir. 1990) (finding "ample authority" to support the court's conclusion that the unsatisfiability of a money judgment can constitute irreparable injury).

Without an injunction preventing the EHB from acting in response to the Riverkeeper Defendants' delay tactics, there is a risk that: (1) the Project will not be placed in-service by the November 1, 2013 deadline; (2) Tennessee will suffer a loss of customer confidence and a harm to its reputation in the industry; and (3) Tennessee will lose $9.1 million per month in revenues during the delay period, the lost time-value of which cannot be satisfied by the non-profit organizations that are Defendants here.    Tennessee, therefore, has demonstrated immediate and irreparable harm sufficient to justify a preliminary injunction designed to prevent unwarranted delay.

### C.    The Defendants Will Not Suffer Irreparable Harm if the Injunction is Granted.

In deciding whether to grant injunctive relief, "[a] court must consider whether 'the relative harm which will be visited upon the movant by the denial of injunctive relief is greater than that which will be sustained by the party against whom relief is sought." *Citizens for Rational Coastal Dev. v. U.S. Fed. Highway Admin.*, Nos. 07-4551 (JAP), 07-5246 (JAP), 2008 WL 2276005, at *6 (D.N.J. May 30, 2008) (citations omitted).    This element weighs heavily in favor of Tennessee.   In contrast to the significant construction delays and reputational and

financial harms that Tennessee will suffer absent an injunction, any damages to Defendants are speculative at best. *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545-46 (1987) (stating that harms are not irreparable where they are not "sufficiently likely," particularly when the harms alleged are general harms to the environment).

The administrative record shows that FERC conducted an exhaustive review of the potential environmental impacts of the Project and found "no significant impact" on the environment. *See* EA, at 4-1. The Project's 84% collocation with existing pipeline corridor minimizes impacts on landowners and the surrounding communities and significantly reduces permanent alteration of the environment. FERC concluded that many environmental impacts are expected to be "minor," "temporary," and "short term." Creel Decl. ¶ 13. The FERC Order adds comprehensive mitigation efforts designed to further minimize environmental impacts. *See* FERC Order ¶¶ 39-201. FERC and various federal and state agencies have thoroughly considered and addressed the harms alleged by the Riverkeeper Defendants and determined them to be speculative and insufficient to outweigh the irreparable harms that Tennessee will suffer absent an injunction.

**D.    The Public Interest Favors Granting the Injunction, which will Permit Construction to Proceed on Schedule.**

Granting injunctive relief that will prevent needless delay of the Project is in the  public interest. The Project would provide additional natural gas capacity to

meet increased demand in the Northeast and would provide jobs and tax revenues. Creel Decl. ¶ 6; Heckman Decl. ¶ 11.

Courts in the Third Circuit and elsewhere have found a strong public interest in constructing and operating interstate pipelines. *See, e.g., Steckman*, 2008 WL 4346405, at *17 (holding that issuance of the FERC order is evidence that the project is in the public interest); *Columbia Gas Transmission Corp. v. An Easement*, No. 05 CV 2895, 2006 WL 401850, at *3 (E.D. Pa. Feb. 16, 2006) (granting immediate possession because interstate pipeline service was in the public interest); *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) ("[G]ranting plaintiff immediate possession of the property is in the public interest as it will enable the gas companies . . . to meet the requirements of the . . . winter heating season." (internal quotation marks omitted)). While protecting the environment is a public interest, it is not the *only* public interest to consider in determining whether to issue injunctive relief, particularly where such relief involves ensuring the provision of natural resources. *Amoco*, 480 U.S. at 545-46 (rejecting the notion that environmental considerations "supersede all other interests," including natural resource development).

Here, FERC has declared that the Project is in the public interest and that "the public convenience and necessity requires approval" of the Project.   FERC Order ¶ 24; *see also* Creel Decl. ¶ 14.   The public will be harmed if the Project is

27

not completed by the November 1, 2013 in-service date, which coincides with the peak winter heating season. *See* Heckman Decl. ¶ 7. If construction and completion are delayed by the actions of the EHB or the Riverkeeper Defendants, the public will have reduced access to natural gas when it needs it most. *See id.* Issuing an injunction to ensure the Project proceeds on schedule avoids this negative consequence. In addition, delaying construction will postpone the substantial economic benefits that construction of the Project will generate. *See id.* ¶ 11. Therefore, the public interest favors granting Tennessee's Emergency Motion for Injunctive Relief.

V.   **CONCLUSION**

For the reasons set forth above, Tennessee respectfully requests that this Court grant the Emergency Motion for Preliminary Injunction, and enter such further relief as it deems just and proper.

Respectfully submitted,

s/ Elizabeth U. Witmer
John F. Stoviak, Esquire (*pro hac vice*
    pending)
Elizabeth U. Witmer, Esquire
Jennifer L. Beidel, Esquire
Atty. I.D. Nos. 23471, 55808, 204450
jstoviak@saul.com
ewitmer@saul.com
jbeidel@saul.com
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
Phone: (215) 972-7850
Fax:     (215) 972-1843

Dated:  January 7, 2013

*Attorneys for Tennessee Gas Pipeline
Company L.L.C.*

# **CERTIFICATE OF SERVICE**

I, Elizabeth U. Witmer, hereby certify that the foregoing *Memorandum of Law in Support of Emergency Motion for Preliminary Injunction to Prevent the Pennsylvania Environmental Hearing Board from Issuing Supersedeas Relief* was served via first class mail on the following counsel of record:

Aaron Stemplewicz, Esquire
Karimah Schoenhut, Esquire
Jane P. Davenport McClintock,
Esquire
DELAWARE RIVERKEEPER
NETWORK
925 Canal Street, Suite 3701
Bristol, PA 19007
*Attorneys for Defendants
Delaware Riverkeeper Network,
Maya van Rossum,
and Responsible Drilling Alliance*

Vincent F. Gustitus, Jr.
Board Secretary
PENNSYLVANIA
ENVIRONMENTAL HEARING
BOARD
Second Floor, Rachel Carson State
Office Building
400 Market Street
Harrisburg, PA 17105-8457
*Representative of Defendant
Pennsylvania Environmental
Hearing Board*

Jordan Yeager
CURTIN & HEEFNER LLP
Heritage Gateway Center
1980 South Easton Road, Suite 220
Doylestown, PA 18901
*Attorneys for Defendants
Delaware Riverkeeper Network,
Maya van Rossum,
and Responsible Drilling Alliance*

OFFICE OF ATTORNEY
GENERAL
Civil Law Division
Strawberry Square
Harrisburg, PA 17120
*Attorney for Defendant Pennsylvania
Environmental
Hearing Board*

Dated:  January 7, 2013

s/ Elizabeth U. Witmer
Elizabeth U. Witmer, Esquire

1436979.9 01/07/2013